J-E02005-19

2020 PA Super 252

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DAVID SANTANA | |
| Appellant | No. 3488 EDA 2017 |

Appeal from the Judgment of Sentence entered July 18, 2017
In the Court of Common Pleas of Monroe County
Criminal Division at No: CP-45-CR-0000031-2017

BEFORE:  BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J., STABILE, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., and MURRAY, J.

DISSENTING OPINION BY STABILE, J.:          **FILED OCTOBER 20, 2020**

I respectfully dissent. I believe the Majority paints too broadly in reaching the result that there was an *ex post facto* violation underlying Appellant's criminal sentence for failing to comply with the registration requirements of 42 Pa.C.S.A. § 4915.1(a)(3), as required under the Sexual Offender Registration and Notification Act ("SORNA") in effect at the time of his sentencing on July 18, 2017.[1]  While I agree fully with the Majority's recitation of our law regarding *ex post facto* considerations, I believe the Majority errs by not focusing on the more narrow and relevant question in this case.  Our task here is not to decide whether the entirety of SORNA's registration provisions in their entirety may be retroactively applicable to

---

[1] 42 Pa.C.S.A. §§ 9799.10 *et seq.*

Appellant without an *ex post facto* violation.[2]  Rather, the *ex post facto* analysis we must engage in requires only that we determine whether Appellant's registration failures supporting his conviction disadvantage him more than the registration obligations he already is subject to under New York law.  I conclude the relevant provisions of SORNA do not, and therefore would affirm the trial court's denial of Appellant's motion to withdraw his guilty plea.

In 1983, New York State convicted Appellant of Rape in the First Degree, a felony under New York law.  Appellant became subject to New York's Sex Offender Registration Act ("SORA") enacted on January 21, 1996,[3] because he was convicted of a registrable offense and was on parole or probation supervision as of the date of that Act's enactment. Trial Court Opinion, 10/17/17, at 1 n.2. There is no dispute that Appellant was subject to registration under SORA.  As the Majority notes, New York considers SORA a civil, regulatory consequence of Appellant's conviction that does not violate the *Ex Post Facto* Clause (U.S. Const. art. I, § 10) and, therefore, does not prohibit New York from applying the law retroactively.  Majority Opinion at 4 n.5.  SORA classifies Appellant as a Level three sex offender and, as such, imposes lifetime registration upon him in that state.  Trial Court Opinion,

_____

[2] Appellant in his statement of question presented references both the state and federal *Ex Post Facto* Clauses. He, however, makes no substantive distinction between these clauses in the arguments presented. Therefore, references herein to "*Ex Post Facto* Clause(s)" should be deemed a reference to both clauses, unless the context indicates otherwise.

[3] N.Y. Correct. Law §§ 168 and 168-a-w.

10/17/17, at 1 n.2. As under SORNA, the failure of a sex offender to register or verify required information under SORA constitutes a felony. N.Y. Correct. Law § 168-t.

Appellant moved to Pennsylvania in November 2015 and, as required under SORNA, registered with the Pennsylvania State Police ("PSP"). His New York conviction for rape qualifies as a Tier III sexual offense under SORNA thus requiring lifetime registration as a sexual offender in Pennsylvania. 42 Pa.C.S.A. §§ 9744.14(d), 9799.15(a)(3).

In September 2016, the PSP was conducting routine verification checks on sex offenders and noticed a discrepancy regarding Appellant's Internet identifiers. Trial Court Opinion, 10/17/17, at 2. Investigation revealed that Appellant reported to the PSP on six occasions subsequent to November 2015, but never reported any Internet identifiers. Pursuant to search warrant, the PSP subsequently found Facebook account information associated with Appellant that revealed several indicators, including a registered email address and phone number, as well as a second phone number not registered with the PSP. On November 7, 2016, Appellant was interviewed by the PSP and it was determined he failed to report in a timely manner termination of a phone number, the addition of another number, commencement of employment, and the use of two Internet identifiers. *Id*. at 3. Appellant was charged with various registration crimes and eventually pled guilty to failure to comply with registration requirements under Section 4915.1(a)(3).

- 3 -

Immediately following our Supreme Court's decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), Appellant moved to withdraw his guilty plea for violating Section 4915.1(a)(3) on the basis that his SORNA registration requirement was an unconstitutional *ex post facto* punishment for his 1983 crime. As such, Appellant claimed he could not have failed to register, verify, and provide accurate information as required under SORNA. The Majority considers Appellant's argument to be "because *Muniz* exempted [Appellant] from SORNA, he unknowingly and erroneously pleaded guilty to the crime of failing to register - a crime he could not have committed, as a matter of law." Majority Opinion at 5. The Majority opens its analysis stating that Appellant raises one issue in this appeal: "whether the trial court abused its discretion and erred as a matter of law when it determined [Appellant's] registration and conviction under SORNA did not violate the state and federal *Ex Post Facto* Clauses." *Id.* Based on *Muniz*, the Majority ultimately concludes,

> Pennsylvania impermissibly penalized Mr. Santana under SORNA's registration requirement for a crime that predated SORNA by 30 years. The *Ex Post Facto* Clauses forbids [sic] this state action. Mr. Santana's registration requirement under SORNA was an after-the-fact punishment and, therefore, unconstitutional. Accordingly, he had no duty to comply with those requirements and his conviction for ignoring them, under 18 Pa.C.S.A. § 4915.1(a)(3), was a manifest injustice and must be overturned.

*Id*. at 19-20. Both Appellant and the Majority approach the issue in this case as if the entirety of SORNA's registration scheme for non-SVP offenders, as in

*Muniz*, was the controlling and relevant issue in this case. In my opinion, this is error.

Appellant was charged with various registration crimes for failing to timely report and update his phone numbers, Internet identifiers, and place of employment as required under SORNA. He pled guilty to a single count of failure to comply with registration requirements under Section 4915.1(a)(3). Appellant's conviction was not dependent upon the entirety of SORNA's registration scheme being applied to him. Rather, his conviction was based upon his failure to comply with several discrete SORNA registration provisions: namely, the failure to register and update the aforesaid information.

In *Muniz*, our Supreme Court granted review to determine whether SORNA's non-SVP registration provisions, as applied retroactively to Muniz, were unconstitutional under the *Ex Post Facto* Clauses of the United States and Pennsylvania constitutions. *Muniz* was not a case that addressed whether Appellant was properly convicted under 4915.1(a)(3) for failure to comply with some of SORNA's registration provisions. The Court's holding was limited to finding that SORNA's registration provisions, as a whole to be punitive, could not be applied retroactively to Muniz without violating the *Ex Post Facto* Clauses because his conviction predated SORNA's enactment. SORNA however has never been held to be unconstitutional.

In my opinion, the relevant inquiry is **not** whether SORNA's registration provisions as a whole were improperly applied retroactively to Appellant. Rather, the issue is whether the specific registration failures committed by

Appellant could serve as a basis for sustaining his conviction for violating Section 4915.1(a)(3). Our inquiry should be whether SORNA's requirement to update and verify an offender's phone numbers, Internet identifiers, and place of employment, could be applied retroactively to Appellant as a result of his 1983 rape conviction in New York without violating the *Ex Post Facto* Clauses. The answer to this question, as will be discussed *infra*, depends upon whether SORNA changes or inflicts a greater punishment than SORA to the disadvantage of Appellant.

Critical to relief under the *Ex Post Facto* Clause is not a right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond that prescribed when a crime was consummated. **Muniz**, 164 A.3d at 195 (citations omitted). Based on these concerns, four categories of laws that violate the *Ex Post Facto* Clause have been identified: first, every law that makes an action done before the passing of the law, which innocent when done, criminal, and punishes such action; second, every law that aggravates a crime or makes it greater than it was when committed; third, every law that changes punishment and annexes a greater punishment than the law at the time the crime was committed; and fourth, every law that alters the legal rules of evidence and receives less, or different, testimony than the law required at the time of the commission of an offense in order to convict. **Id.** Only the third category is applicable in this case. Two critical elements must be met for a criminal law to be deemed *ex post facto*: it must be retrospective, *i.e.*, it must apply to events occurring

before its enactment, and it must disadvantage the offender affected by the law. *Only those laws that disadvantage a defendant and fall within one of these categories are ex post facto laws and constitutionally infirm.* ***Id***. at 195-96.

Both Appellant and the Majority rely heavily upon the holding in ***Muniz***. In my opinion, they both overlook a critical fact that distinguishes ***Muniz*** from the instant appeal. In ***Muniz***, the appellant was not lawfully subject to any prior registration requirements imposed under Pennsylvania law or elsewhere. In this case, there is no dispute Appellant was lawfully subject to offender registration under SORA before he came to Pennsylvania. For *ex post facto* purposes, there were no applicable pre-existing registration requirements in ***Muniz*** against which to compare SORNA's registration scheme to determine if Muniz was further disadvantaged by SORNA. Here, there is a prior and lawful registration scheme, SORA, against which SORNA's registration requirements may be measured to determine whether Appellant has been further disadvantaged in Pennsylvania in violation of the *Ex Post Facto* Clauses. In effect, SORA functions as a benchmark against which to measure the retroactive application of SORNA for *ex post facto* purposes.

With these considerations in mind and keeping within the more narrow focus that defines the *ex post facto* issue in this case, the criminal statute under which Appellant was convicted can be examined. The central inquiry is whether the relevant registration provisions retroactively applied to Appellant

impose a greater disadvantage upon him than those to which he is subject under New York's SORA law.

The criminal statute under which Appellant pled guilty, Section 4915.1(a)(3), provides:

> **Failure to comply with registration requirements.**
>
> **(a)** **Offense defined.--**An individual who is subject to registration under **42 Pa.C.S. § 9799.13** (relating to applicability) commits an offense if he knowingly fails to:
>
> > (1)    register with the Pennsylvania State Police as required under 42 Pa.C.S. § 9799.15 (relating to period of registration), 9799.19 (relating to initial registration) or 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police);
> >
> > (2)    verify his address or be photographed as required under 42 Pa.C.S. § 9799.15, 9799.19 or 9799.25; or
> >
> > (3)    provide accurate information when registering under 42 Pa.C.S. § **9799.15, 9799.19 or 9799.25**.

18 Pa.C.S.A. § 4915.1(a)(emphasis added).

SORNA is made applicable to Appellant under section 9799.13(7).

> **§ 9799.13.  Applicability.**
>
> The following individuals shall register with the Pennsylvania State Police as provided in sections 9799.15 (relating to period of registration), 9799.19 (relating to initial registration) and 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police) and otherwise comply with the provisions of this subchapter:
>
> ***
>
> (7)  A sexual offender required to register in a sexual offender registry in another jurisdiction or in a foreign country based upon a conviction for a sexually violent offense or under a sexual

offender statute in the jurisdiction where the individual is convicted and:

(i) has a residence in this Commonwealth or is a transient;

(ii) is employed within this Commonwealth; or

(iii) is a student within this Commonwealth.

42 Pa.C.S.A. § 4799.13.

In pertinent parts, sections 4799.15, 4799.19, and 4799.25, referenced in Section 4715.1(a)(3), provide:

**§ 9799.15. Period of registration.**

**(a) Period of registration.--**Subject to subsection (c), an individual specified in section 9799.13 (relating to applicability) shall register with the Pennsylvania State Police as follows:

\*\*\*

(3) An individual convicted of a Tier III sexual offense[4] shall register for the life of the individual.

\*\*\*

**(e) Periodic in-person appearance required.--**Except as provided in subsection (f) and subject to subsections (g) and (h), an individual specified in section 9799.13 shall appear in person at an approved registration site to provide or verify the information set forth in section 9799.16(b) (relating to registry) and to be photographed as follows:

\*\*\*

(3) An individual convicted of a Tier III sexual offense shall appear quarterly.

42 Pa.C.S.A. § 9799.15.

---

[4] A Tier III sexual offense includes a similar offense under the laws of another jurisdiction or country or under a former law of this Commonwealth. 42 Pa.C.S.A. § 9799.14(d)(13). Appellant's conviction of rape qualifies as a Tier III offense in Pennsylvania.

**§ 9799.19. Initial registration.**

**(a) General rule.--**An individual set forth in section 9799.13 (relating to applicability) shall initially register with the Pennsylvania State Police as set forth in this section.

\*\*\*

**(i) Initial registration if convicted or adjudicated delinquent outside Commonwealth.--**

(1) An individual subject to registration under section 9799.13(7), (7.1) or (7.2) shall appear in person at an approved registration site to provide the information set forth in section 9799.16(b) to the Pennsylvania State Police within three business days of establishing residence, commencing employment or commencing enrollment as a student within this Commonwealth. In addition, the individual shall comply with the other provisions of this subchapter, including section 9799.15 (relating to period of registration).

42 Pa.C.S.A. § 9799.19.

**§ 9799.25. Verification by sexual offenders and Pennsylvania State Police.**

**(a) Periodic verification.--**Except for initial registration as provided in section 9799.19 (relating to initial registration) and in accordance with section 9799.15(a) (relating to period of registration), sexual offenders shall verify the information provided in section 9799.16(b) (relating to registry) and be photographed as follows:

\*\*\*

(3) An individual convicted of a Tier III sexual offense shall appear in person at an approved registration site quarterly.

42 Pa.C.S.A. § 9799.25.

Section 9755.16(b), relating to the registration information to be provided by a sexual offender, referenced in all three of the above provisions, provides in pertinent part:

**§ 9799.16. Registry.**

**(b) Information provided by sexual offender.--**An individual specified in section 9799.13 (relating to applicability) shall provide the following information which shall be included in the registry:

(1) Primary or given name, including an alias used by the individual, nickname, pseudonym, ethnic or tribal name, regardless of the context used and **any designations or monikers used for self-identification in Internet communications or postings**.

(2) **Designation used by the individual for purposes of routing or self-identification in Internet communications or postings**.

(3) **Telephone number**, including cell phone number, and any other designation used by the individual for purposes of routing or self-identification in telephonic communications.

***

(9) **Name and address where the individual is employed or will be employed**. In order to fulfill the requirements of this paragraph, if the individual is not employed in a fixed workplace, the individual shall provide information regarding general travel routes and general areas where the individual works.

42 Pa.C.S.A. § 9799.16(b)(emphasis added).

Assuming for the moment Appellant is subject to SORNA's registration requirements, Appellant qualifies as a Tier III sex offender. As such, he had an initial and a continuing obligation upon his move to Pennsylvania to register with the PSP and to report to the PSP with the frequency required to register and verify his registration information. Specifically as it concerns this case, Appellant had this obligation with regard to his phone numbers, Internet identifiers, and places of employment. His failure to do so was sufficient to support conviction under Section 4715.1(a)(3).

- 11 -

Having established that Appellant's registration failures were sufficient to convict under Section 4715.1(a)(3), the inquiry as to whether SORNA's registration obligations were punitive and, therefore, violative of the *Ex Post Facto* Clause can be examined. A proper inquiry must compare New York's SORA registration requirements with those under SORNA to determine whether subjecting Appellant to SORNA's relevant registration requirements places him at a greater disadvantage than the registration requirements imposed upon him under New York's SORA law. As stated, this does not require a wholesale analysis of SORNA's registration requirements, since we need only be concerned with whether or not the registration requirements— the failures of which led to Appellant's conviction under Section 4915.1(a)(3)—were more onerous than those imposed under New York's SORA law. It is unnecessary, in my opinion, to engage in a broader consideration of SORNA as argued by Appellant and performed by the Majority. Any inquiries pertaining to registration requirements that did not form the basis for Appellant's conviction are irrelevant to the *ex post facto* consideration before this Court.

As a Level three offender under SORA and a Tier III offender under SORNA, Appellant, as a convicted rapist, has lifetime registration requirements. ***Cf.*** N.Y. Correct. Law § 168-h(2), 42 Pa.C.S.A. § 9799.15(a)(3). Therefore, the duration of the registration requirement

under SORNA does not further disadvantage Appellant from the registration duration under New York's SORA.

Under SORA, a Level three offender must personally verify his or her address with the local law enforcement agency every 90 calendar days after release or after, as the case here, commencement of parole or post-release supervision. N.Y. Correct. Law §§ 168-f(3) and 168-h(3). Under SORNA, a Tier III sexual offender must appear quarterly (every 90 days) in person at an approved registration site to verify information provided under section 9799.16(b), including current address information. 42 Pa.C.S.A. §§ 9799.25(a)(3) and 9799.16(b)(3). Once again, Appellant is not further disadvantaged under SORNA than he is under SORA. Both laws require Appellant to appear personally at the appropriate office on a quarterly basis.

Under SORNA an individual convicted of a Tier III offense must also appear quarterly not only to verify his or her address, but also to verify the information set forth in Section 9799.16(b), which includes the remaining registration information Appellant failed to provide to the PSP relating to phone numbers, Internet identifiers, and employment. 42 Pa.C.S.A. §§ 9799.25(a)(3), 9799.16(b)(2)(3) and (9). Admittedly, New York's SORA law does not require quarterly appearances to verify this additional information. Instead, verification of this additional information is to be done by mailing a provided verification form to the New York State Division of Criminal Services ("Division") on each anniversary date of the sex offender's

initial registration for the entire period in which he or she is required to register. N.Y. Correct. Law § 168-f(2). Nonetheless, SORNA's requirement to appear personally every quarter to verify this additional information does not further disadvantage Appellant, because Appellant already must appear quarterly under SORA to verify his address information.

Finally, under SORNA, a sex offender must appear in person at an approved registration site within three business days to provide current information relating to any change in, *inter* alia, residence, employment, telephone numbers, and Internet identifiers. 42 Pa.C.S.A. § 9799.15(g). By contrast, under New York's SORA law, a sex offender must register with the Division no later than ten calendar days after any change of address, Internet accounts, Internet identifiers, or employment. N.Y. Correct. Law § 168-f(4). The difference between the time in which updated information is to be provided as between SORNA and SORA can be as little as five days (since SORNA speaks in terms of three business days) or as many as seven days. I conclude this difference does not further unconstitutionally disadvantage Appellant for *ex post facto* purposes for several reasons. First, both statutes require prompt update of changes in this information. While SORNA requires this information within three business days, SORA requires the information no later than ten days, which certainly includes time less than ten days, or as little as three days. Second, I do not find the difference between five and seven days significant. Third, information changes relating to phone numbers,

employment, and Internet identifiers do not normally recur with any predictable frequency. It therefore is possible that any update of this information will never be triggered for the entire duration of an offender's registration period. On the other hand, it is also possible that these updates may occur more frequently than expected. The record is silent in this case as to how this condition relates to Appellant and he offers no argument otherwise.

To summarize, Appellant pled guilty and was convicted of violating Section 4715.1(a)(3) for failure to provide accurate information to the PSP with regard to his phone numbers, Internet identifiers, and employment. Any one of these failures was sufficient to sustain his conviction for failure to comply with registration requirements under this criminal statute. Although SORNA's registration requirements were applied retroactively to sustain Appellant's conviction, there was no *ex post facto* violation because the burden upon Appellant under SORNA did not further disadvantage him from the registration requirements to which he was already subject under New York's SORA law. Consequently, offenders like Appellant cannot relocate to Pennsylvania and escape the registration requirements imposed under New York's law. The trial court's order denying Appellant's motion to withdraw his guilty plea therefore should be affirmed.

Judge Dubow joins this dissenting opinion.